NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFROMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.

**ASSIGNMENT TO TRUST**

THIS Assignment is being made on the __28TH__ day of _August_, 2024 by Lonnie K Ledbetter Jr of Hood County State of Texas, whether one or more, I, LONNIE K. LEDBETTER, JR., under Article V, paragraph C, of the Ledbetter Community Property Trust, c/u the Lonnie K. Ledbetter, Jr. and Saundra Lea Ledbetter 2000 Revocable Trust dated July 17, 2000 and amended and restated by the Fifth Amended and Restated Trust Agreement dated October 11, 2018 and subsequently amended by the First Amendment to the Fifth Amended and Restated Trust Agreement dated May 6, 2021, Whereas upon the death of Saundra the trust splits and creates The Community Property Trust. Dated_April 4, 2024 , as the Assignee.

Assignor(s) do hereby assign, convey, and deliver to the assignee all of the Assignor's right, title and interest in and to the attached described property.

DATED this the 28th day of August, 2024

Lonnie K Ledbetter Jr, Trustor

STATE OF TEXAS

COUNTY OF HOOD

This instrument was acknowledged before me on 8/28/2024, by Lonie K Ledbetter Jr, personally known to me.

NOTARY PUBLIC STATE OF TEXAS
Melanie Batts
ID # 129797530
My Commission Expires
August 27, 2028

Melanie Batts

## Schedule A

The Granter/Assignor assigns, conveys and delivers to this Living Trust, all of the rights, title and interest, tangible or intangible, to the following properties, real or personal:

1. 599 and 601 Meander Rd Granbury TX 76049.
2. 30430 River road Ono Island AL 36561.
3. Charles Schwab #2124-8871.
4. Charles Schwab #6869.
5. Charles Schwab #9619-4245.
6. Charles Schwab #3383-2929.
7. Charles Scwab #2128-4869.
8. Charles Schwab #1715-6931
9. 2022 Can Am Spyder Motorcycle

[redacted]

11. 2004 Dodge Viper
12. 500 shares of common stock of Trace Air, Inc VAD
13. 100% Ownership of Iron Horse Appaloosa Ranch, LLC
14. 50% Ownership of Dallas T51, LLC
15. 100% Ownership of Iron Horse Cub, LLC
16. 100% Ownership of Cub Realty LLC

**EXERCISE OF LIFETIME GENERAL POWER OF APPOINTMENT**

I, LONNIE K. LEDBETTER, JR., under Article V, paragraph C, of the Ledbetter Community Property Trust, c/u the Lonnie K. Ledbetter, Jr. and Saundra Lea Ledbetter 2000 Revocable Trust dated July 17, 2000 and amended and restated by the Fifth Amended and Restated Trust Agreement dated October 11, 2018 and subsequently amended by the First Amendment to the Fifth Amended and Restated Trust Agreement dated May 6, 2021, am given a lifetime general power of appointment over the property administered pursuant to Article V thereunder for my benefit.

I hereby appoint all of such property to TAWNI J. JONES-LEDBETTER, outright and free of trust, as her sole and separate property.

EXECUTED this 2nd day of October, 2024.

LONNIE K. LEDBETTER, JR.

THE STATE OF TEXAS §
§
COUNTY OF Hood §

This instrument was acknowledged before me on the 2nd day of October, 2024, by LONNIE K. LEDBETTER, JR..

MELANIE BATTS
Notary Public, State of Texas
Comm. Expires 08-27-2028
Notary ID 129797530

Notary Public, State of Texas

42098250v.1 168185/00001

CHAD PETROSS LED 00027203

**ACKNOWLEDGEMENT OF RECEIPT**

Lonnie K. Ledbetter, Jr., as Trustee of the Ledbetter Community Property Trust, c/u the Lonnie K. Ledbetter, Jr. and Saundra Lea Ledbetter 2000 Revocable Trust dated July 17, 2000 and amended and restated by the Fifth Amended and Restated Trust Agreement dated October 11, 2018 and subsequently amended by the First Amendment to the Fifth Amended and Restated Trust Agreement dated May 6, 2021 acknowledges receipt of the Exercise of Lifetime Power of Appointment.

LONNIE K. LEDBETTER, JR., Trustee





CHAD PETROSS LED 00027204

# THE JONES-LEDBETTER FAMILY REVOCABLE TRUST

This Trust Agreement is entered into between Tawni Jean Jones-Ledbetter of Hood County, Texas ("Grantor") and Tawni Jean Jones-Ledbetter of Hood County, Texas, as Trustee in accordance with the terms of this instrument (the "Trust Agreement").

## ARTICLE 1

## TRUST PROPERTY AND INITIAL DIRECTION FOR ADMINISTRATION

Contemporaneously with the signing of this Trust Agreement, Grantor transfers to Trustees the property described in Schedule A (which is attached to and for all purposes made a part of this Trust Agreement). The Trustee shall hold this property and all increments, proceeds, and other property which the Trustee may hold or acquire pursuant to the provisions of this Trust Agreement (the "trust property") in trust for the purposes and subject to the conditions set forth in this Trust Agreement.

## ARTICLE 2

## REVOCATION AND AMENDMENT

While Grantor is living and is not incapacitated, Grantor shall have the right by written instrument signed by Grantor personally (and not by any personal representative) and delivered to the Trustee to alter, amend, or revoke this Trust Agreement in any manner. Further, Grantor, while not incapacitated, shall have the right to add property to the corpus of the trust estate, and to withdraw all or any part of such Grantor's property. After Grantor's death, no person shall have the right to alter, amend, or revoke this Trust Agreement and the trusts evidenced by it; Notwithstanding the foregoing, no amendment may be made which would increase or change the duties or responsibilities of the Trustee without the Trustee's written consent. During any period in which Grantor is incapacitated, no person, guardian, custodian, conservator, attorney-in-fact, or other person or entity acting for Grantor or on Grantor's behalf shall have the right to alter, amend, or revoke this Trust Agreement and the trusts evidenced by it, nor to otherwise demand a withdrawal or distribution of trust property in excess of that which, in the discretion of Trustee, is properly distributable to Grantor or for Grantor's benefit under the terms of this Trust Agreement during such period or periods of incapacity

## ARTICLE 3

## PURPOSES

**3.1** **General Purpose:** The Grantor's purpose is to create a revocable trust for management of the trust property during Grantor's lifetime and to provide for the disposition of the trust property after Grantor's death. During Grantor's lifetime, or by Grantor's Last Will and Testament, Grantor specifically reserves the right to add additional property to this trust and to cause insurance policies or employee benefit plans to be payable to the Trustee as beneficiary.





X-11

**3.2 <u>Primary Beneficiaries:</u>** This trust is created for the Grantor's benefit during the Grantor's lifetime. The Trustee shall administer the trust for such principal purpose and shall use the income and principal liberally for Grantor's health, maintenance, support, care, and comfort, or for any other purpose Trustee, in its discretion, deems to be in Grantor's best interest, and shall invest the trust property with that objective in mind, without regard to the future interest of the remainder beneficiaries of the trust. In furtherance of the principal purpose of this trust, the Grantor specifically relieves the Trustee of the duty of loyalty or impartiality to the persons to whom or for whose benefit the trust property will be distributed at Grantor's death. Those persons' interests shall be secondary and subordinate to Grantor's interest. In addition, during Grantor's lifetime, no beneficiary (other than Grantor) of this Trust Agreement has the right to demand a trust accounting with respect to such a trust, and Grantor specifically relieves Trustee of any duty to keep such beneficiary reasonably informed.

**3.3 <u>Deference Given to Grantor:</u>** While the Grantor is not incapacitated, if there is any difference of opinion between Grantor and a Trustee about any matter relating to the administration, management, distribution, or investment of the trust property of this trust, then the Grantor shall have the ultimate right to decide any such matter and the right to veto the decision of Trustee. While the Grantor is not incapacitated, he has the final decision-making authority over any matter relating to the administration, management, distribution, or investment of the trust property of this trust.

**3.4 <u>Distributions of Income and Principal:</u>** During Grantor's lifetime, Grantor, while not incapacitated, may direct Trustee to distribute all or part of the property of this trust, whether income or principal, by delivering to Trustee a written instrument which designates to whom the distribution is made; provided, however, that if Grantor is serving as Trustee, no such written instrument is required by Grantor in directing a distribution of trust property under this sentence. Additionally, while Grantor is not incapacitated, Trustee may distribute such income or principal of this trust to Grantor (or for Grantor's benefit) as Trustee deems advisable for such Grantor's health, maintenance, support, care, and comfort, or for any other purpose Trustee, in its discretion, deems to be in Grantor's best interest. While Grantor is incapacitated, the Trustee shall distribute or apply such amounts of the net income and principal of this trust as the Trustee considers advisable for Grantor's health, maintenance, support, care, and comfort, or for any other purpose Trustee, in its discretion, deems to be in Grantor's best interest. During such periods of incapacity, any written direction for trust distributions shall not be effective.

**3.5 <u>Distribution Upon Death of Grantor:</u>** After the death of Grantor, this trust shall terminate and the Trustee shall distribute the remaining trust property to the following individuals in the following percentile shares outright and free of trust:

**3.5.1** Twenty-two and one-half percent (22.5%) to BRANDON M. GIANNOTTI.

**3.5.2** Twenty-two and one-half percent (22.5%) to JAYDA M. CLEMMONS.

**3.5.3** Twenty-two and one-half percent (22.5%) to SPENCER G. LANNINGHAM.

**3.5.4** Twenty-two and one-half percent (22.5%) to NICHOLAS J. GIANNOTTI.

**3.5.5** Ten percent (10%) to CHARITY R. BILES.

In the event an above named beneficiary does not survive, such deceased beneficiary's shares shall pass to his or her then living descendants, per stirpes. In the event an above named beneficiary does not survive with then living descendants, such deceased beneficiary's percentile share shall pass to the above named surviving beneficiaries in equal shares.

## ARTICLE 4

## APPOINTMENT AND TENURE OF THE TRUSTEE

**4.1** **Appointments:** The initial trustee of the Trust shall be TAWNI JEAN JONES-LEDBETTER. If TAWNI JEAN JONES-LEDBETTER ceases to serve as trustee of the Trust, then BRANDON M. GIANNOTTI and NICHOLAS J. GIANNOTTI shall serve as successor co-trustees of such trust. If BRANDON M. GIANNOTTI or NICHOLAS J. GIANNOTTI ceases to serve as trustee of the Trust, then the survivor shall serve as successor trustee of such trust.

**4.2** **Appointment of Successor Trustees by Grantor:** Notwithstanding any other provision of this Trust Agreement, with respect to this Trust Agreement, at any time and from time to time, the Grantor shall have the right (i) to appoint one or more individuals or a corporate trustee to act as co-trustee, (ii) to remove any acting trustee, with or without cause, (iii) to fill any vacancy by appointing one or more individuals or a corporate trustee to act as sole trustee or co-trustees, (iv) to direct that a vacancy not be filled if another trustee is acting, (v) to designate one or more individuals or a corporate trustee to act as trustee in the event of a vacancy and to direct the manner and order in which those designees shall act, (vi) to revoke any prior designation of a successor trustee, and (vii) to provide for the removal and appointment of trustees in the event he or she is unable to exercise the powers granted in this paragraph.

**4.3** **Resignation:** Any trustee or a co-trustee of any trust may resign as such, at any time, with or without cause, and without the necessity of a court order or procedure. To so resign, trustee or co-trustee must give at least sixty (60) days written notice to any co-trustee of such trust and to each beneficiary who would then be eligible to receive any distribution which might be made from such trust (other than by exercise of a power of appointment). Giving notice shall not be necessary if all persons entitled to such notice waive the requirement. Notice to a beneficiary shall be effective if it is given to any then legal or natural guardian of the beneficiary or to any adult with whom the beneficiary is then residing.

**4.4** **Vacancy:** If the trustee of this Trust fails or ceases to act as such and this Trust Agreement contains no other provision for a successor trustee who is willing and able to serve as such, the primary beneficiary shall have the right to appoint a successor trustee. If a primary beneficiary is under the age of eighteen (18) years or is incapacitated, such beneficiary's natural or legal guardian or an agent acting under such beneficiary's duly executed durable power of attorney may act for him or her for this purpose. Such successor trustee must be a trust company or bank





possessing trust powers and having a combined capital and surplus of not less than Fifty Million Dollars.

**4.5** **Procedure For Appointment:** An appointment of a co-trustee or a successor trustee or co-trustee must be by instrument which: (1) states the effective date of appointment, (2) is signed by the person or the requisite number of persons required to make the appointment, (3) is accepted by the appointee with such acceptance being evidenced by the appointee's signature, (4) is acknowledged before a notary public, and (5) is filed with the records of the trust.

## ARTICLE 5

## CONCERNING THE TRUSTEE GENERALLY

**5.1** **Compensation:** Each individual Trustee and Co-Trustee, other than Grantor, may receive fair and reasonable compensation for services. Each corporate Trustee and Co-Trustee may receive compensation in accordance with its regular schedule of fees existing when services are performed. Such compensation may, but need not necessarily, be calculated in reference to any statutory commission or compensation provided by law. Each Trustee and Co-Trustee shall receive reimbursement for expenses incurred in rendering such services. As such, each Trustee or Co-Trustee may retain and pay directly to itself compensation and reimbursement for expenses, without first obtaining prior approval of any Court, regardless of any provision of law to the contrary.

**5.2** **General Powers:** Trustee shall have discretion and complete power to administer the trusts and shall have all powers conferred on trustees by the Texas Trust Code. In addition to those powers now or subsequently conferred by law upon Trustee, Trustee may do without limitation the following, all of which may be exercised without the necessity of securing the approval or order of any court: (1) retain, without regard to diversification of investments and without liability for any depreciation or loss resulting from such retention, any real or personal property transferred to this trust, even though such assets or property may otherwise be considered underproductive property or may not generally or under strict rules of law be regarded as proper trust investments; (2) mortgage, sell, partition, or otherwise dispose of all or any part of the trust property for adequate and full consideration; (3) borrow money at reasonable rates of interest for any purpose incidental to the administration of the trust or for the protection or preservation of the trust property, and in connection with such borrowing, execute pledges, mortgages, deeds of trust, or other security instruments; (4) make loans to any beneficiaries (even of a spendthrift trust) on terms and interest that Trustee may determine to be in the beneficiary's best interest, provided such loan cannot be compelled by the beneficiary or by a personal representative or creditor of a beneficiary; (5) alter, improve, repair, replace, and abandon assets; (6) sell, exchange, encumber, lease for any period, or otherwise dispose of any asset of the trust, publicly or privately, with or without notice, wholly or partly for cash or credit, without appraisal, and give options for those purposes; (7) abandon, compromise, contest, and arbitrate claims by or against the trust and agree to any rescission or modification of any contract or agreement relating to the trust; (8) register and hold property in its own name or in the name of a nominee, but without decreasing its fiduciary liability; (9) invest in common trust funds or securities of investment companies and to invest in interest-bearing time deposits issued by itself; (10) purchase liability, fire, casualty, or other

insurance of any nature, form, or amount to insure and protect the trust property and the Trustee itself, including liability insurance sufficient in the judgment of the Trustee to protect itself against personal liability as to the claims of any person interested in the trust or any third party; (11) sell or execute rights issued on any securities, vote securities in person or by proxy and grant proxies and powers of authority to such person or entity as Trustee may deem proper, and consent to and participate in any plans of liquidation, reorganization, consolidation, or merger of any corporation, any security of which is held in trust; (12) employ and compensate agents, advisors, and employees, including, without limitation, accountants, legal counsel, custodians, and investment counsel, and delegate to them any and all discretions and power; (13) invest in, manage, and retain interests in any business, whether in the form of proprietorship, joint venture, partnership, limited partnership, or corporation, even though such interest may otherwise be considered underproductive property or may not generally or under strict rules of law be otherwise regarded as proper trust investments and in regards to any such corporation, to make or continue the election by such corporation, the securities of which are property of the trust, to be taxed pursuant to Subchapter S of the Code, if the beneficiary of such trust makes the election required under Section 1361 of the Code; (14) execute any type of lease, including mineral leases, on trust property, even if the lease extends beyond the term of the trust, and any lease executed by Trustee shall bind the beneficiaries; (15) reimburse itself for all expenses, costs, attorney's fees, and similar disbursements reasonably incurred; (16) provide for the release or exoneration of the Trustee from personal liability in any written agreement or contract entered into on behalf of itself or any trust; and (17) take such action and incur such expenses as may reasonably be necessary for the purposes of the trust.

5.3 **Investments in Common:** If separate trusts or separate shares in a single trust are created, Trustee is not required to make an actual division in kind of the property in such trusts or shares, but may administer and invest the separate trusts or shares as one or more common funds, assigning undivided interests to the several trusts or shares in accordance with their respective interests.

5.4 **Partition and Distribution in Kind:** Trustee may partition in kind and may make distributions (including the satisfaction of any pecuniary bequest) in cash, in specific property, in undivided interests in property, or partly in cash and partly in property. Unless otherwise specifically provided, Trustee may make such partitions and distributions without regard to the income tax basis of specific property allocated to any beneficiary (including any trust) and without making pro-rata distributions of specific assets.

5.5 **Authority to Self-Deal:** Trustee shall not be prohibited from making contracts or having dealings with itself in any other fiduciary capacity as executor or trustee with respect to any estate or trust created by Grantor or others. The intent of this provision is to allow the management of such properties to be carried on for the best interests of each trust or estate without there being applied rules prohibiting a fiduciary from contracting or dealing with itself as a fiduciary of other properties. No individual while serving as Trustee shall be prohibited from dealing or contracting with himself or herself individually or with any partnership, corporation, or financial or business entity with which he or she is employed or in which he or she owns an interest, so long as he or she acts in a fiduciary capacity.

**5.6** **Distributions to Beneficiaries:** A distribution "to" a beneficiary shall include a distribution "for the benefit" of that beneficiary. Trustee may make any distribution to a beneficiary in any one or more of the following ways: (1) to a beneficiary directly; (2) to the guardian, committee, conservator, or other similar official of a minor or incapacitated beneficiary; (3) to a custodian of a minor beneficiary under the Texas Uniform Transfers to Minors Act or under a similar act of the state where such minor beneficiary resides, if different; (4) to a relative or parent of a minor or incapacitated beneficiary to be expended by such relative or parent for the health, education, maintenance, and support of such beneficiary; (5) to an attorney-in-fact designated in a power of attorney previously executed by a beneficiary; (6) by expending the same directly on behalf of such beneficiary according to the applicable distribution standard in the trust created for such beneficiary; or (7) pursuant to the applicable terms and conditions of Article 4 above.

**5.7** **Reliance on Affidavits Regarding Descendants or Heirs at Law:** If Trustee is to distribute property to or for persons described as descendants or heirs at law of a designated person, Trustee may make such distributions pursuant to any sworn affidavit stating who such persons are. No such distribution shall result in personal liability to Trustee. This paragraph shall not affect any right which any such appointee, beneficiary in default of appointment, descendant, or heir at law may have against any distributee.

**5.8** **Ancillary Trustee:** If trust property is situated in a jurisdiction (the "foreign jurisdiction") other than the jurisdiction where the trust situs is located, Trustee may name in writing any individual or a bank or trust company having trust powers in the foreign jurisdiction as trustee to act in the foreign jurisdiction in connection with trust property as Ancillary Trustee. Unless prohibited by applicable law or court rule, Trustee may appoint itself as Ancillary Trustee. Within the limits of the authority of Trustee, the Ancillary Trustee has the rights, powers, discretions, and duties the Trustee delegates, subject to the limitations and directions of the Trustee specified in the instrument evidencing the appointment of the Ancillary Trustee.

**5.9** **Release of Power:** By acknowledged instrument filed in the records of the trust, Trustee or a co-Trustee, in its discretion, may release any fiduciary power at any time, in whole or in part, temporarily or permanently, whenever Trustee or the co-Trustee deems it advisable and in the best interests of the beneficiary.

**5.10** **Acts of Prior Trustees:** No Trustee need examine the accounts, records, or acts of any previous Trustee. Further, a Trustee may accept as correct and complete all statements concerning the trust which are made by a prior Trustee or his or her personal representative.

**5.11** **Standard of Liability of Trustee:** Notwithstanding any contrary provision of this Trust Agreement, a Trustee or co-Trustee shall be liable only for (1) a breach of trust committed by Trustee or co-Trustee in bad faith, intentionally, or with reckless indifference to the interest of a beneficiary, or (2) any profit derived by Trustee or co-Trustee from a breach of trust committed in bad faith, intentionally, or with reckless indifference to the interest of a beneficiary. A Trustee or co-Trustee shall be indemnified and held harmless from any and all damages, losses, and liabilities (including all reasonable attorney fees, court costs, and associated expenses) that the Trustee or co-Trustee may incur as a result of an action taken by the Trustee or co-Trustee in

performing his or her duties, provided, however, that the Trustee or co-Trustee shall not be indemnified or held harmless for any damages, losses, and liabilities (including all reasonable attorney fees, court costs, and associated expenses) resulting from the Trustee or co-Trustee's breach of trust committed in bad faith, intentionally, or with reckless indifference to the interest of a beneficiary.

5.12 **Waiver of Bond:** No Trustee or Co-Trustee shall be required to give bond in any jurisdiction.

5.13 **Accounting:** Any corporate Trustee or Co-Trustee shall furnish to each person who is entitled to receive or who is a permissible recipient of income from a trust created in this Trust Agreement an annual accounting clearly setting forth all of the trust estate at the beginning of the accounting period, all receipts and disbursements during the accounting period, and all of the trust estate remaining on hand at the end of the accounting period. Individual Trustees not serving with a corporate Trustee shall furnish an accounting as described in this paragraph on the written demand of each person who is entitled to receive or who is a permissible recipient of income from a trust created in this Trust Agreement.

5.14 **Reserves and Indemnification:** Trustee shall have the power to set aside from the net income of any trust and to retain in its hands reasonable reserves for reasonably anticipated contingencies, including expenses, taxes, repairs, and Trustee's fees. Trustee shall be entitled to retain in its hands sufficient funds or property of the Trust to indemnify itself against any liability properly incurred by it as Trustee until it is discharged from or relieved of such liability or is otherwise indemnified with respect to the same to its satisfaction.

5.15 **Allocation of Receipts and Expenditures:** During the administration of any trust created under this Trust Agreement, Trustee shall allocate all receipts and expenditures of such trust between income and principal in accordance with the following guidelines: (1) such allocations of receipts and expenditures between income and principal shall be made by Trustee in accordance with the express provisions of this Trust Agreement, if any; provided, however, that if any income or remainder beneficiary of such trust is serving as Trustee or Co-Trustee and would otherwise have discretion under the express provisions of this Trust Agreement to allocate expenses and receipts between principal and income, then such allocations shall be made in accordance with (2) and (3) below; (2) in the absence of any such express provisions in this Trust Agreement, such allocations shall be made by Trustee in accordance with the applicable provisions of the Texas Trust Code, as amended, if any; and (3) in the event that neither this Trust Agreement nor the Texas Trust Code contain express provisions authorizing or directing the method of allocation of specific receipts and expenditures between income and principal, Trustee shall make such allocations in accordance with what Trustee, in its sole discretion, determines to be reasonable and equitable taking into consideration the interests of the various beneficiaries entitled to such income or principal and the conflict of interest provisions, if any, set forth this Trust Agreement. In making such allocations, Trustee may, but is not required to, consider the applicable provisions of the Revised Uniform Principal and Income Act, as amended, where such Uniform Act is not in conflict with the express provisions of this Trust Agreement or with the provisions of the Texas Trust Code, as amended.

**5.16** **<u>Allocations Regarding Securities</u>:** Stock dividends, dividends in liquidation, rights issued on securities, capital gains (including dividends on shares of mutual funds derived from capital gains) shall be allocated to principal. All other dividends, except those declared and payable as of a record date before the death the Deceased Spouse (or the Surviving Spouse, as appropriate), shall be allocated to income. Trustee may charge or credit to principal any premiums and discounts on securities purchased at more or less than par.

**5.17** **<u>Allocations to Reflect Depreciation or Depletion</u>:** The Trustee is authorized, but not required, to allocate to principal reasonable amounts of the current income from the trust to reflect the depreciation or depletion of property comprising a part of the trust estate of any trust created in this Trust Agreement.

**5.18** **<u>Cost Regarding Tangible Personal Property</u>:** Trustee shall pay as an administrative expense the cost of packing and shipping tangible personal property to a beneficiary at his or her residence or place of business.

**5.19** **<u>Powers Regarding Oil, Gas, Other Minerals, and Timber</u>:** The Trustee is authorized: to enter into oil, gas, liquid or gaseous hydrocarbon, sulphur, metal, timber, and any and all other natural resource leases on terms deemed advisable by the Trustee; to enter into any pooling, unitization, repressurization, community, and other types of agreements relating to the exploration, development, operation, farming, cutting, and conservation of properties containing minerals, timber, or other natural resources; to drill, mine, and otherwise operate for the development of oil, gas, and other minerals or farming of timber; to contract for the installation and operation of absorption and repressuring plants; to install and maintain pipelines; to purchase leases, royalties, and any type of mineral or timber interest; and to execute and deliver drilling or farming contracts and other contracts, options, and other instruments necessary or desirable to participate actively in the oil, gas, mining, or timber business. All of the foregoing may include such terms, conditions, agreements, covenants, provisions, or undertakings as the Trustee deems appropriate.

**5.20** **<u>Delegation of Authority</u>:** Co-Trustees may, at will, on such terms as may be designated in writing, delegate any of their rights, authority, or powers to each other, including signatory authority over accounts or funds held by such Co-Trustees.

**5.21** **<u>Authority of Individual Co-Trustee</u>:** If any individual(s) is (are) serving as Co-Trustee(s) with a corporate Co-Trustee and there shall be any difference of opinion between such individual (or the majority of such individuals) and the corporate Co-Trustee about any matter relating to the administration, management, distribution, or investment of the trust property of any trust created under this Trust Agreement, then the individual Co-Trustee (or the majority of the individual Co-Trustees) shall have the ultimate right to decide any such matter and the right to veto the decision of such corporate Co-Trustee, for the purpose of preventing any deadlock between such individual(s) and the corporate Co-Trustee.

**5.22** **<u>Release of Power</u>:** By acknowledged instrument filed in the records of the trust, Trustee or a Co-Trustee, in its discretion, may release any fiduciary power at any time, in whole







or in part, temporarily or permanently, whenever Trustee or the co-Trustee deems it advisable and in the best interests of the beneficiary.

5.23 **Independent Administration:** So far as can be legally provided, all of the powers and discretions granted to the Trustee shall be exercised without the supervision of any court.

5.24 **Merger or Consolidation of Trusts:** If a Trustee of any trust created under this Trust Agreement is a Trustee of any other trust for the benefit of the same beneficiaries, with substantially similar terms to a trust created by Grantor during Grantor's lifetime or by Grantor's Will, then Trustee may transfer and merge all of the assets of a trust created in this Trust Agreement to and with such other trust and terminate the trust created in this Trust Agreement as a separate entity. Likewise, Trustee may add to, return, and administer as a part of the trust property of any trust created under this Trust Agreement, the assets of any such other trust. If a Trustee of any trust under this Trust Agreement is also a trustee of any other trust for the benefit of the same beneficiaries, with substantially similar terms as those in this Trust Agreement, such Trustee may treat each trust as separate and distinct, but consolidate them into a single common fund for investment and administration, assigning undivided interests to the trusts in accordance with their respective interests. This authority to merge or consolidate trusts applies to any other trust, regardless of how, when, or by whom created. By use of the phrase "on substantially similar terms," this provision includes trusts providing for different events for termination and different ages and qualifications of beneficiaries for distributions. The Grantor intends to give Trustee the greatest authority to consolidate trusts for the most efficient and economical administration of such trusts. Accordingly, Trustee may combine trusts on substantially similar terms for investment and make the necessary distributions or terminations required by the different trusts through the use of allocations in its account and bookkeeping procedures. In exercising the authority given in this paragraph, Trustee should be mindful of any adverse tax consequences.

5.25 **Severance or Segregation of Trusts:** Without the necessity of judicial proceedings or notice to beneficiaries, Trustee shall have the power to: (1) hold property otherwise directed to be added to or consolidated with the trust property of any trust held hereunder as a separate trust having terms identical to the terms of the existing trust, (2) sever any trust on a fractional basis into two or more separate trusts for any reason, and/or (3) segregate by allocation to a separate trust a specific amount out of, a portion of, or specific assets included in, the trust property of any trust held hereunder to reflect a partial disclaimer or for any tax or other reason in a manner consistent with any applicable rules and regulations. In administering the trust property of any separate trust and in making applicable tax elections, the Trustee shall consider the differences in federal tax attributes and all other pertinent factors and may make disproportionate distributions from the separate trusts created. A separate trust created by severance or segregation shall be treated as a separate trust for all purposes from and after the date designated by Trustee as the effective date of the severance or segregation and shall be on terms and condition that are equivalent to the terms of the trust from which it was severed or segregated so that the aggregate interests of each beneficiary in the several trusts are equivalent to the interests in the trust before severance or segregation; provided, however, that any terms of the trust before severance or segregation that would affect qualification of the trust for any federal tax deduction, exclusion, election, exemption or other special federal tax status must remain identical in each of the separate

trusts created. The express provisions under this paragraph shall not limit any implied severance or segregation powers granted under the applicable law.

**5.26** **Maximum Duration**: No trust shall continue longer than the maximum term allowed by applicable state law. For purposes of determining the lives in being under a state's applicable perpetuities statute (if any), the descendants of Queen Elizabeth II shall be considered the applicable lives in being. If a trust will extend beyond the term permitted by law, then the trust shall terminate at the expiration of the latest time permitted by law and the remaining trust estate shall be distributed in equal shares to the person or persons then entitled to receive distributions from the trust in such shares and in such manner as the Trustee in its discretion determines to be in the best interest of the beneficiaries.

**5.27** **Early Termination of Trust:** A corporate Trustee may terminate a trust if, in its opinion, continuation of the trust is contrary to the best interest of the beneficiaries by reason of (1) legislation, (2) unforeseen changes or circumstances, or (3) the value of the trust property being at such a level so as to make the continued administration of the trust financially burdensome or uneconomical. If a trust is terminated under these circumstances, the remaining trust property shall be distributed to the person or persons then entitled to receive distributions from the trust in such shares and in such manner as the Trustee in its discretion determines to be in the best interest of the beneficiaries. In exercising the authority in this paragraph, the Trustee shall be mindful of any adverse tax consequences.

**5.28** **Legal or Contractual Obligations:** Trustee shall make no distributions in satisfaction of the personal legal obligation of the Trustee or of any beneficiary to support or maintain any other person or in satisfaction of the contractual obligation incurred by any person on behalf of any other person, excluding, however, any contractual obligation incurred by Trustee, in its fiduciary capacity, on behalf of a beneficiary.

## ARTICLE 6

## GENERAL PROVISIONS

**6.1** **Spendthrift Provision:** All trusts under this Trust Agreement are spendthrift trusts to the maximum extent permissible under applicable state law. Accordingly, the interest of each beneficiary in a trust under this Trust Agreement is subject to a spendthrift trust. Prior to actual receipt by any beneficiary, no income or principal distributable from a trust under this Trust Agreement shall be subject to anticipation, assignment, sale, alienation, hypothecation, pledge, or transfer by any beneficiary nor subject to attachment, levy, execution, or garnishment by any creditor, any person, or by the government, and any such attempted action by an beneficiary or claimant shall be absolutely and wholly ineffectual to the fullest extent permitted by law.

**6.2** **Survival:** Unless specifically provided otherwise in this Trust Agreement, for purposes of this Trust Agreement, no person shall be deemed to have survived any other person if such person dies within ninety (90) days of such other person.

**6.3** **<u>Separate Property</u>:** Property of any character, including income, held for or paid to a beneficiary (other than Grantor) of a trust created under this Trust Agreement shall be owned by the beneficiary (beneficially, when held for the beneficiary) as separate property and not as community property, the intent being that such property is a gift.

**6.4** **<u>Situs and Governing Law</u>:** This Trust Agreement has been drawn and executed in Texas. All questions concerning the meaning and intention of any of its terms, its validity, the exercise of the powers of appointment, if any, and the administration or powers created by this Trust Agreement, shall be determined in accordance with the laws of Texas. The situs of the administration of any trust shall be and is fixed in Texas; provided, however, that if the Trustee shall be or become a resident of or have principal place of business in a state other than Texas, the situs of the trust may be changed to the place of residence of an individual Trustee who is serving alone as sole Trustee or to the place of business of a corporate Trustee if one is then serving as sole or co-Trustee. If and when the trust situs is changed, all questions concerning the meaning and intention of any of its terms, its validity, the exercise of the powers of appointment, if any, and the administration or powers created by this Trust Agreement, shall be determined in accordance with the laws of the state in which the trust situs is located. Such change in situs shall be made by agreement of the Trustee (or the successor Trustee if a Trustee has evidenced its intention to resign) and the beneficiaries of the trust who would be entitled at the time to receive any distribution which might then be made from the trust (other than by exercise of a power of appointment) (if a beneficiary is a minor or is incapacitated, the beneficiary's natural or legal guardian may act for him or her for this purpose), without court approval or joinder of any contingent or remainder beneficiaries of the trust.

**6.5** **<u>Principal Residence</u>**: In the event the trust contains any property used as Grantor's principal residence, then Trustee shall allow Grantor to occupy, rent-free for the term of the trust, any such property, and to retain and maintain such property irrespective of the fact that such property may be the type in which a Trustee would not otherwise invest in or is an undivided interest with any joint owner. Such property shall not be sold by the Trustee without Grantor's written consent, unless Grantor is incapacitated and Trustee determines that sale of the principal residence is necessary. In the event of any such sale, Trustee may reinvest all or any part of the proceeds of such sale in other residential property to be held in trust. It is the Grantor's preference that Grantor be maintained in such Grantor's principal residence for as long as possible.

**6.6** **<u>Disclaimers</u>:** If a person executes a disclaimer with respect to property passing under or held in a trust under this Trust Agreement and such disclaimer satisfies the requirements of or is treated as a qualified disclaimer under the applicable federal tax laws, such property shall pass as if the disclaimant had died immediately preceding the date on which he or she would have become entitled to the disclaimed interest and such a disclaimer shall be recognized and acted upon by the Trustee as fully effective in accordance with its terms.

**6.7** **<u>Miscellaneous</u>:** This Trust Agreement shall extend to and be binding upon the heirs, executors, administrators, legal representatives, and successors of all parties to this Trust Agreement. If any part, clause, provision, or condition of this Trust Agreement is held to be void, invalid, or inoperative, such voidness, invalidity, or inoperativeness shall not affect any other clause, provision, or condition of this Trust Agreement. The remainder of this Trust Agreement

shall be effective as though such clause, provision, or condition had not been contained in the Trust Agreement. Pronouns, nouns, and other terms shall include the masculine, feminine, neuter, singular, and plural forms of such terms as is appropriate to the context. The headings contained in this Trust Agreement are not to be used in construing or interpreting this Trust Agreement, as they have been included for convenience only.

## ARTICLE 7

## DEFINITIONS

7.1 **Incapacitated:** For purposes of this Trust Agreement, an individual shall be considered "incapacitated" when either of the following occur: (1) within any thirty (30) consecutive days, two doctors residing in the individual's county of residence and licensed to practice medicine in the individual's state of residence declare in notarized affidavits that in their opinion the individual is unable to properly manage his or her affairs because of mental or physical reasons; or (2) a court of competent jurisdiction adjudges the individual to be legally incapacitated. After an individual has been considered incapacitated according to this paragraph, such individual shall continue to be so considered until: (1) within any thirty (30) consecutive days, two doctors residing in the individual's county of residence and licensed to practice medicine in the individual's state of residence declare in notarized affidavits that in their opinion the individual is able to properly manage his or her affairs because of mental or physical reasons; or (2) a court of competent jurisdiction adjudges the individual to have ceased to be legally incapacitated.

7.2 **Tangible Personal Property:** The term "tangible personal property" means all automobiles, recreational vehicles and equipment, household goods, furniture, furnishings, garden equipment, china, jewelry, silver, works of art, collections, personal effects, and any other similar items. It also includes any insurance policies or proceeds of such policies on any of these items. The term excludes cash and items of intangible personal property, even if represented by tangible documentation of ownership. It also excludes tangible personal property used by a Grantor in a trade, business, or profession.

7.3 **Trustee:** The term "Trustee" and the pronoun "it" in reference to such word always refer to the male or female person or persons or to the institution or to any combination of them then holding the trusteeship of any trust under this Trust Agreement. These terms also refer to any successor or alternate. The term "ancillary Trustee" refers to the Trustee necessary to administer the trust property in any jurisdiction other than Texas. The appointment of a corporate trustee shall be deemed to include the appointment of its corporate successor, including its successor by merger, change of name, or otherwise. All ancillary, successor, or alternate trustees shall have the same powers, authorities, obligations, and limitations as the original trustee, unless other provisions of this Trust Agreement specifically provide to the contrary.

**IN WITNESS WHEREOF**, this Trust Agreement is executed and is effective as of the 10th day of October, 2024.

______________________________
TAWNI JEAN JONES-LEDBETTER, Grantor

SUBSCRIBED AND SWORN TO BEFORE me by the said TAWNI JEAN JONES-LEDBETTER, Grantor, this the 10th day of October, 2024.

Notary Public in and for the State of Texas

ACCEPTED

Tawni Jean Jones-Ledbetter, Trustee

MELANIE BATTS
Notary Public, State of Texas
Comm. Expires 08-27-2028
Notary ID 129797530



42250648v.1 168185/00001

## SCHEDULE "A"

The undersigned, Trustee under said Trust Agreement dated this ____ day of October, 2024, hereby acknowledges receipt of the following property of the Grantor:

1. 599 and 601 Meander Road, Granbury, Hood County, Texas.
2. 30430 River Road, Ono Island, Baldwin, County, Alabama.
3. Charles Schwab Account No. 8871.
4. Charles Schwab Account No. 6869.
5. Charles Schwab Account No. 4245.
6. Charles Schwab Account No. 2929.
7. Charles Schwab Account No. 4869.
8. Charles Schwab Account No. 6931.
9. 2008 Broward Raised Pilot House.
10. 2024 Foretravel Presidential.
11. 2024 Land Rover Defender 130.

TAWNI JEAN JONES-LEDBETTER, Trustee

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFROMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.

**ASSIGNMENT TO TRUST**

THIS Assignment is being made on the 10th day of October, 2024 by Tawni Jones-Ledbetter of Hood County State of Texas, whether one or more, and Tawni Jones-Ledbetter, as Trustee of The Jones Ledbetter Family Revocable Trust Dated October 9, 2024 , as the Assignee.

Assignor(s) do hereby assign, convey, and deliver to the assignee all of the Assignor's right, title and interest in and to the attached described property.

DATED this the 10th day of October, 2024

[signature]

Tawni Jones-Ledbetter, Trustor

STATE OF TEXAS

COUNTY OF HOOD

This instrument was acknowledged before me on 10/10/2024, by Tawni Jones-Ledbetter, personally known to me.

NOTARY PUBLIC STATE OF TEXAS
MELANIE BATTS
Notary Public, State of Texas
Comm. Expires 08-27-2028
Notary ID 129797530

[signature]

Melanie Batts

MELANIE BATTS
Notary Public, State of Texas
Comm. Expires 08-27-2028
Notary ID 129797530

[initials]

**Schedule A**

The Grantor/Assignor assigns, conveys and delivers to this Living Trust, all of the rights, title and interest, tangible or intangible, to the following properties, real or personal:

1. 599 and 601 Meander Rd Granbury TX 76049.
2. 30430 River road Ono Island AL 36561.
3. Charles Schwab #8871.
4. Charles Schwab #6869.
5. Charles Schwab #4245.
6. Charles Schwab #2929.
7. Charles Scwab #4869.
8. Charles Schwab #6931
9. 2008 Broward Raised Pilot House
10. 2024 Foretravel Presidential
11. 2024 Landrover Defender 130

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## ASSIGNMENT TO TRUST

THIS Assignment is being made on the 3rd day of January, 2025 by Tawni Jones-Ledbetter of Hood County State of Texas, whether one or more, and Tawni Jones-Ledbetter, as Trustee of The Jones Ledbetter Family Revocable Trust Dated October 9, 2024, as the Assignee.

Assignor(s) do hereby assign, convey, and deliver to the assignee all of the Assignor's right, title and interest in and to the attached described property.

DATED this the 3rd day of January 2025

Tawni Jones-Ledbetter, Trustor

**Schedule A**

The Grantor/Assignor assigns, conveys and delivers to this Living Trust, all of the rights, title and interest, tangible or intangible, to the following properties, real or personal:

1. 500 shares of common stock of Trace Air Inc.
2. 100% Ownership of Iron Horse Appaloosa Ranch LLC.
3. 100% Ownership of L & T Iron Horse Ranch LLC.
4. 50% Ownership of Dallas T51 LLC
5. 100 % Ownership of Iron Horse Cub, LLC.
6. 100 % Ownership of Cub Realty, LLC.
7. 2004 Dodge Viper Vin#.
8. 2022 Can AM Spyder Motorcycle Vin #
9. 80% Ownership Ledbetter Floats Flys Funs
10. 100% Ownership Floats Flys Fun LLC
11. 100 % Ownership of Lonnie & Tawni Ledbetter, LLC
12. Raymond James account #M633
13. Raymond James Account #P634

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## ASSIGNMENT TO TRUST

THIS Assignment is being made on the _28th__day of March, 2025 by Tawni Jones-Ledbetter of Hood County State of Texas, whether one or more, and Tawni Jones-Ledbetter, as Trustee of The Jones Ledbetter Family Revocable Trust Dated October 9, 2024, as the Assignee.

Assignor(s) do hereby correct the previous assignment dated January 3, 2025 to assign, convey, and deliver to the Assignee all of the Assignor's right, title, and interest in and to the attached described property.

DATED this the 28th day of March, 2024

______________________________

Tawni Jones-Ledbetter, Trustor

**Schedule A**

The Grantor/Assignor assigns, conveys and delivers to this Living Trust, all of the rights, title and interest, tangible or intangible, to the following properties, real or personal:

1. 100% Ownership interest in Ledbetter Floats Flys Fun LLC.
2. 70% Ownership interest in Lonnie & Tawni Ledbetter LLC