| | | |
|---|---|---|
| Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>FAX: 512/463-5709<br><br>Filing Fee: $300 | **Certificate of Formation<br>Limited Liability Company** | **Filed in the Office of the<br>Secretary of State of Texas<br>Filing #: 803006552 05/03/2018<br>Document #: 811171900002<br>Image Generated Electronically<br>for Web Filing** |

**Article 1 - Entity Name and Type**

The filing entity being formed is a limited liability company. The name of the entity is:

**Cub Realty, LLC**

**Article 2 – Registered Agent and Registered Office**

☐ A. The initial registered agent is an organization (cannot be company named above) by the name of:

**OR**

☑ B. The initial registered agent is an individual resident of the state whose name is set forth below:

**Name:**
**Calman L. Donsky**

C. The business address of the registered agent and the registered office address is:

**Street Address:**
**2021 McKinney Ave., Ste. 1600 Dallas TX 75201**

**Consent of Registered Agent**

☐ A. A copy of the consent of registered agent is attached.

**OR**

☑ B. The consent of the registered agent is maintained by the entity.

**Article 3 - Governing Authority**

☑ A. The limited liability company is to be managed by managers.

**OR**

☐ B. The limited liability company will not have managers. Management of the company is reserved to the members.

The names and addresses of the governing persons are set forth below:

| | |
|---|---|
| Manager 1: **Lonnie K. Ledbetter Jr** | Title: **Manager** |
| Address: **PO Box 171043 Arlington TX, USA 76003** | |

**Article 4 - Purpose**

The purpose for which the company is organized is for the transaction of any and all lawful business for which limited liability companies may be organized under the Texas Business Organizations Code.

**Supplemental Provisions / Information**

[The attached addendum, if any, is incorporated herein by reference.]

**Organizer**

The name and address of the organizer are set forth below.

**Matt Moran** **2021 McKinney Ave., Ste. 1600, Dallas, TX 75201**

**Effectiveness of Filing**

☑ A. This document becomes effective when the document is filed by the secretary of state.

**OR**

☐ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its signing. The delayed effective date is:

**Execution**

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

**Matt Moran**

Signature of Organizer

**FILING OFFICE COPY**

COMPANY AGREEMENT

OF

CUB REALTY, LLC

A Texas Limited Liability

Company

Dated as of November 3, 2024

# TABLE OF CONTENTS

**Page**


| | | |
|---|---|---|
| ARTICLE I | DEFINITIONS | 1 |
| 1.1 | Definitions | 1 |
| 1.2 | Construction | 2 |
| ARTICLE II | ORGANIZATION | 2 |
| 2.1 | Formation | 2 |
| 2.2 | Name | 2 |
| 2.3 | Registered Office; Registered Agent; Principal Office in the United States; Other Offices | 2 |
| 2.4 | Purposes | 2 |
| 2.5 | Foreign Qualification | 2 |
| 2.6 | Term | 3 |
| 2.7 | Mergers and Exchanges | 3 |
| ARTICLE III | MEMBERSHIP | 3 |
| 3.1 | Members | 3 |
| 3.2 | Liability to Third Parties | 3 |
| 3.3 | Reliance | 3 |
| ARTICLE IV | CAPITAL CONTRIBUTIONS; DISTRIBUTIONS | 3 |
| 4.1 | Initial Contribution | 3 |
| 4.2 | Subsequent Contributions | 4 |
| 4.3 | Distributions | 4 |
| ARTICLEV | MANAGEMENT BY MANAGERS | 4 |
| 5.1 | Management by Managers | 4 |
| 5.2 | Actions by Managers | 4 |
| 5.3 | Number and Term of Office | 4 |
| 5.4 | Vacancies; Removal; Resignation | 4 |
| 5.5 | Approval or Ratification of Acts or Contracts by Member | 4 |
| 5.6 | Action by Written Consent | 5 |
| 5.7 | Conflicts of Interest | 5 |
| 5.8 | Duties of Members and Managers | 5 |
| ARTICLE VI | ADMISSION OF MEMBERS | 5 |
| 6.1 | Admission of Additional Members | 5 |

ARTICLE VII TAXES .......... 6

7.1 TaxReturns .......... 6
7.2 Tax Elections .......... 6
7.3 Tax Matters Partner .......... 6

ARTICLE VIII BOOKS, RECORDS, REPORTS AND BANK ACCOUNTS .......... 6

8.1 Maintenance of Books .......... 6
8.2 Accounts .......... 6

ARTICLE IX WINDING UP AND TERMINATION .......... 6

9.1 Events to Wind Up .......... 6
9.2 Winding Up and Termination .......... 6
9.3 Certificate of Termination .......... 7

ARTICLE X GENERAL PROVISIONS .......... 7

10.1 Payment of Expenses and Compensation .......... 7
10.2 Entire Agreement. .......... 7
10.3 Effect of Waiver or Consent .......... 7
10.4 Amendments to Agreement or Certificate .......... 8
10.5 Binding Effect. .......... 8
10.6 Governing Law; Severability .......... 8
10.7 Creditors .......... 8
10.8 Further Assurances .......... 8
10.9 Counterparts .......... 8

Exhibit A - Members; Initial Capital Contribution; Sharing Ratio

# COMPANY AGREEMENT
# OF
# CUB REALTY, LLC
## A Texas Limited Liability Company

This Company Agreement of Cub Realty, LLC (this "Agreement"), dated as of May 3, 2024, is adopted and entered into by and among Cub Realty, LLC, a Texas limited liability company (the "Company"), Lonnie K. Ledbetter, Jr. and Tawni Jones- Ledbetter in their capacity as Trustees of The Jones- Ledbetter Revocable Trust, as the initial Member of the Company, and Tawni Jones-Ledbetter, Jr., as the sole Manager of the Company.

## ARTICLE I
## DEFINITIONS

**1.1** **Definitions.** As used in this Agreement, the following terms have the following meanmgs:

"Affiliate" means any Person that directly or indirectly controls, is controlled by, or is under common control with the Person in question. As used in this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities, by contract, or otherwise.

"Agreement" has the meaning set forth in the preamble hereof.

"Capital Contribution" means any contribution by a Member to the capital of the Company.

"Certificate" has the meaning given that term in Section 2.1.

"Code" means the Internal Revenue Code of 1986 and any successor statute, as amended from time to time.

"Company" has the meaning set forth in the preamble hereof.

"Manager" means any Person or Persons named in the Certificate as an initial Manager of the Company and any Person or Persons hereafter elected as a Manager of the Company as provided in this Agreement, but does not include any Person who has ceased to be a Manager of the Company.

"Member" means each Person executing this Agreement as of the date of this Agreement as a member or any Person hereafter admitted to the Company as a member, but does not include any Person who has ceased to be a member in the Company.

"Membership Interest" means the interest of a Member in the Company, including, without limitation, rights to distributions (liquidating or otherwise) and allocations.

"Person" means an individual or a corporation, limited liability company, partnership, trust, estate, unincorporated organization, association or other entity.

"Sharing Ratio" with respect to any Member, shall mean the percentage of total Membership Interest owned by a Member set forth opposite such Member's name on Exhibit A to this Agreement, as such Exhibit may be amended from time to time in accordance with this Agreement.

"TBOC" means the Texas Business Organizations Code and any successor statute, as amended from time to time.

Other terms defined herein have the meanings so given them.

**1.2 Construction.** Whenever the context requires, references in this Agreement to the singular number shall include the plural and the plural number shall include the singular, and the gender of all words used in this Agreement includes the masculine, feminine and neuter. Unless the context makes clear to the contrary, all references to an Article or a Section refer to articles and sections ofthis Agreement, and all references to Exhibits are to exhibits attached hereto, each of which is made a part hereof for all purposes.

## ARTICLE II
## ORGANIZATION

**2.1 Formation.** The Company has been organized as a Texas limited liability company by the filing of its Certificate of Formation (the "Certificate") under and pursuant to the TBOC.

**2.2 Name.** The name of the Company is "Cub Realty, LLC". All Company business must be conducted in that name or such other names that comply with applicable law as the Managers may select from time to time.

**2.3 Registered Office; Registered Agent; Principal Office in the United States; Other Offices.** The registered office of the Company required by the TBOC to be maintained in the State of Texas shall be the office of the initial registered agent named in the Certificate or such other office as the Managers may designate from time to time in the manner provided by law. The registered agent of the Company in the State of Texas shall be the initial registered agent named in the Certificate or such other Person as the Managers may designate .from time to time in the manner provided by law. The principal office of the Company in the United States shall be at such place as the Managers may designate from time to time, which need not be in the State of Texas, and the Company shall maintain records there as required by Sections 3.151 and 101.501 of the TBOC. The Company may have such other offices as the Managers may designate from time to time.

**2.4 Purposes.** The purpose of the Company is to transact any and all lawful business for which limited liability companies may be organized under the TBOC, and to do all things necessary or incidental thereto to the fullest extent permitted by law.

**2.5 Foreign Qualification.** Prior to the Company's conducting business in any jurisdiction other than Texas, the Managers shall cause the Company to comply, to the extent

procedures are available and those matters are reasonably within the control of the Managers, with all requirements necessary to qualify the Company as a foreign limited liability company in that jurisdiction. The Managers (or either of them) shall execute, acknowledge, swear to and deliver all certificates and other instruments conforming with this Agreement that are necessary or appropriate to qualify, continue, or terminate the Company as a foreign limited liability company in all such jurisdictions in which the Company may conduct business or cease to conduct business.

**2.6** **Term.** The Company commenced on the date of filing of the Certificate with the Secretary of State of Texas and shall continue in existence until terminated after its business and affairs are wound up in accordance with ARTICLE IX.

**2.7** **Mergers and Exchanges.** The Company may be a party to a merger, consolidation, conversion or other reorganization of the types permitted by the TBOC.

## ARTICLE ID
## MEMBERSHIP

**3.1** **Members.** Lonnie K. Ledbetter, Jr. and Tawni Jones- Ledbetter in their capacity as Trustees of The Jones- Ledbetter Revocable Trust shall initially be the sole Member of the Company, and are admitted to the Company as a Member effective contemporaneously with the execution by such trustees of this Agreement. Except as expressly provided in this Agreement, a reference to action, consent, vote, approval, ratification or similar action of the Members, as such, shall mean the unanimous action, consent, vote, approval, ratification or similar action of the Members.

**3.2** **Liability to Third Parties.** The Members and the Managers shall not be liable for the debts, obligations or liabilities of the Company (whether arising in contract, tort or otherwise), including under a judgment, decree, or order of a court or arbitrator. The failure of the Company to observe any formalities or requirements relating to the exercise of its powers or the powers of the Members or the Managers under this Agreement or the TBOC shall not be grounds for imposing any liability on the Members or the Managers for the debts, obligations, or liabilities of the Company.

**3.3** **Reliance.** The Members shall be entitled to rely on the prov!Slons of this Agreement, and the Members shall not be liable for any action or refusal to act taken in good faith reliance on the terms of this Agreement. The duties and obligations imposed on the Members as such shall be those set forth in this Agreement, which are intended to govern the relationship between the Company and the Members, notwithstanding any provision of the TBOC or common law to the contrary.

## ARTICLE IV
## CAPITAL CONTRIBUTIONS; DISTRIBUTIONS

**4.1** **Initial Contribution.** Contemporaneously with the execution by the initial Member of this Agreement, such Member shall make the initial Capital Contributions described in Exhibit A attached hereto. No interest shall accrue on any contribution and the Members shall not have the right to withdraw or be repaid any contribution except as provided in this Agreement.

**4.2** **Subsequent Contributions.** Additional Capital Contributions may be made by the Members upon the approval of the Members. Notwithstanding anything in this Agreement to the contrary, the Members shall not be required to make any future Capital Contributions absent the approval of the Members as described in the preceding sentence.

**4.3** **Distributions.** The Company may make such distributions to the Members as are determined by the Managers from time to time in their discretion. No distribution shall be made unless, immediately after the distribution, the fair value of the total assets of the Company equals or exceeds the total liabilities of the Company, all in accordance with Section 101.206 of the TBOC.

## ARTICLEV
## MANAGEMENT BY MANAGERS

**5.1** **Management by Managers.** Except for situations in which the approval of the Members is required by this Agreement or nonwaivable provisions of applicable law, (i) the powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under the direction of, the Managers; and (ii) the Managers may make all decisions and take all actions for the Company not otherwise provided for in this Agreement.

**5.2** **Actions by Managers.**

(a) In managing the business and affairs of the Company and exercising its powers, the Managers shall act collectively through meetings and written consents as provided below.

(b) Any Person dealing with the Company, other than a Member, may rely on the authority of any Manager in taking any action in the name of the Company without inquiry into the provisions of this Agreement or compliance herewith, regardless of whether that action actually is taken in accordance with the provisions of this Agreement.

**5.3** **Number and Term of Office.** The number of Managers shall be decided by the Members from time to time. If the Members make no such determination, the number of Managers shall be one (1). The initial Manager shall be that person set forth in the Certificate. Each Manager shall hold office for the term for which he is elected and thereafter until his successor shall have been elected and qualified, or until his earlier death, resignation or removal. Unless otherwise provided in the Certificate, Managers need not be Members or residents of the State of Texas.

**5.4** **Vacancies; Removal; Resignation.** Any vacancy occurring in the Managers may be filled by the consent of the Members. A Manager elected to fill a vacancy shall be elected for the unexpired term of his predecessor in office. Any Manager position to be filled by reason of an increase in the number of Managers shall be filled by the consent of the Members.

**5.5** **Approval or Ratification of Acts or Contracts by Member.** The Managers in their discretion may submit any act or contract for approval or ratification by the Members, and any act or contract that shall be approved or be ratified by the Members shall be valid and binding upon the Company. Failure of the Managers for any reason (or for no reason) to submit any act or

contract to the Members for approval or ratification shall not in any way act to, or be deemed to, make such act or contract void or voidable.

**5.6** **Action by Written Consent.** Any action permitted or required by the TBOC, the Certificate, or this Agreement to be taken at a meeting of the Members or the Managers may be taken without a meeting, without prior notice and without a vote if a consent in writing, setting forth the action to be taken, is signed by all of the Members or all of the Managers, as the case maybe.

**5.7** **Conflicts of Interest.** Subject to the other express provisions of this Agreement, the Members and, **in** the absence of a contrary action or resolution by the Members, each Manager, at any time and from time to time may engage in and possess interests in other business ventures of any and every type and description, independently or with others, including ones in competition with the Company, with no obligation to offer to the Company or any other Member or Manager the right to participate therein. Nothing in the preceding sentence shall in any way eliminate or reduce any obligation of any Person to hold any information or trade secret confidential. The Company may transact business with any Manager or Member or Affiliate thereof, provided the terms of those transactions are no less favorable than those the Company could obtain from unrelated third parties.

**5.8** **Duties of Members and Managers.** In discharging their duties, the Members and Managers shall be fully protected in relying in good faith upon the records required to be maintained under Section 3.151 of the TBOC and upon such information, opinions, reports or statements by any of Company's agents, or by any other Person as to matters the Members or Managers reasonably believe are within such other Person's professional or expert competence and who or which has been selected with reasonable care by or on behalf of the Company, including (without limitation) information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits or losses of the Company or any other facts pertinent to the existence and amount of assets from which distributions to the Members might be properly paid. Any repeal or amendment of this Section or adoption of any other provision of the Certificate or this Agreement inconsistent with this Section shall be prospective only and shall not adversely affect any limitation on the liability to the Company of the Members or Managers existing at the time of such repeal, amendment, or adoption of an inconsistent provision.

## ARTICLE VI
## ADMISSION OF MEMBERS

**6.1** **Admission of Additional Members.** Upon the approval of the Members, the Managers may admit additional Members and determine the amount of Capital Contribution(s) and the Sharing Ratio in the Company to be held by such new Members. Upon admission of any new Member, this Agreement shall be amended as shall be agreed by the Members, and shall provide (among other things) for allocations and distributions of profits and losses between the Members, voting, and other matters deemed appropriate by the Members.

## ARTICLE VII
## TAXES

**7.1 Tax Returns.** The Managers shall cause to be prepared and filed any necessary federal and state income tax returns for the Company, including reporting the elections described in Section 7.2.

**7.2 Tax Elections.** The Managers of the Company shall make any tax election including, without limitation, whether the Company shall adopt a cash or accrual method of accounting.

**7.3 Tax Matters Partner.** Tawni Jones-Ledbetter, or such other person as the Members may determine, shall be the tax matters partner (as defined in the Code) of the Company.

## ARTICLE VIII
## BOOKS, RECORDS, REPORTS AND BANK ACCOUNTS

**8.1 Maintenance of Books.** The Managers shall cause the Company to keep books and records of account and shall keep records of the formal resolutions of the Managers and the Members. The books of account for the Company shall be maintained on a cash or accrual basis (as determined by the Managers) in accordance with the terms of this Agreement. The calendar year (or such other year as may be determined by the Managers from time to time) shall be the accounting year of the Company.

**8.2 Accounts.** The Managers shall establish and maintain one or more separate financial institution and/or investment accounts and arrangements for Company funds in the Company name and with financial institutions and firms that the Managers may determine.

## ARTICLE IX
## WINDING UP AND TERMINATION

**9.1 Events to Wind Up.** The Company shall wind up on the first to occur of the following:

(a) the written election or determination of the Members to do so; or

(b) the entry of a decree of judicial winding up and termination of the Company under Section 11.314 of the TBOC.

**9.2 Winding Up and Termination.** Upon any event requiring winding up of the Company, the Managers shall serve as liquidator. The liquidator shall proceed diligently to wind up the affairs of the Company and make final distributions as provided herein and in the TBOC. The costs of winding up shall be a Company expense. Until final distribution, the liquidator shall continue to operate the Company's assets, with all of the Managers' authority subject to the provisions of this Agreement. The steps to be accomplished by the liquidator are as follows:

(a) as promptly as possible after an event of winding up and again after completion of the process of winding up, the liquidator shall cause a proper accounting to

be made of the Company's assets, liabilities and operations through the last day of the calendar month in which the event requiring winding up occurs or the final liquidation is completed, as applicable;

(b) the liquidator shall cause the notice described in Section I1.052 of the TBOC to be sent to each known claimant against the.Company to the extent, and in the manner, described in Section 11.052 of the TBOC;

(c) the liquidator shall pay, satisfy or discharge from Company funds all of the debts, liabilities and obligations of the Company (including all expenses incurred in winding up) or otherwise make adequate provision for payment and discharge thereof (including the establishment of a cash escrow fund for contingent liabilities in such amount and for such term as the liquidator may reasonably determine); and

(d) unless the Members otherwise agree in writing, all remaining assets of the Company shall be distributed to the Members in-kind.

The distribution of cash and/or other property to a Member in accordance with this Section 9.2 will constitute a complete distribution to the Member with respect to its Membership Interest and the Member's interest in the Company's property.

**9.3** **Certificate of Termination.** On completion of the winding up and distribution of Company assets as provided herein, the Company is terminated, and the Managers (or such other Person or Persons as the TBOC may require or permit) shall file a Certificate of Termination with the Secretary of State of Texas, cancel any other filings made pursuant to Section 2.5 and take such other actions as may be necessary to terminate the Company.

## ARTICLEX
## GENERAL PROVISIONS

**10.1** **Payment of Expenses and Compensation.** Promptly after the filing of the Certificate, the Company shall reimburse the initial Member for any fees and costs and out-of-pocket expenditures advanced by such Member relating to the formation of the Company and the preparation of this Agreement and associated documentation. Thereafter, all reasonable expenditures of the Company and the Managers, with respect to the Managers' duties and obligations contemplated by this Agreement, shall be paid by the Company.

**10.2** **Entire Agreement.** This Agreement constitutes the entire company agreement of the Company, and the entire agreement of the Members and Managers regarding the Company's governance, and supersedes any prior company agreement of the Company, whether oral or written.

**10.3** **Effect of Waiver or Consent.** No waiver of any term or condition of this Agreement or consent to any breach or default hereof shall be enforceable unless it is **in** writing and signed by the Person against which it is sought to be enforced. A waiver or consent to or of any breach or default by any Person in the performance by that Person of its obligations with respect to the Company is not a consent or waiver to or of any other breach or default in the performance by that Person of the same or any other obligations of that Person with respect to the

Company. Failure on the part of a Person to complain of any act of any Person or to declare any Person in default with respect to the Company, irrespective of how long that failure continues, does not constitute a waiver by that Person of its rights with respect to that default until the applicable statute of limitations period has run.

**10.4** **Amendments to Agreement or Certificate.** This Agreement may be amended or modified from time to time only by written agreement of the Members. The Certificate may be amended or modified from time to time only upon the written agreement of the Members.

**10.5** **Binding Effect.** This Agreement is binding on and inures to the benefit of the Members and their respective heirs, successors and assigns.

**10.6** **Governing Law; Severability.** THIS AGREEMENT IS GOVERNED BY, AND SHALL BE ENFORCED UNDER AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO ANY CONFLICT OF LAW RULES OR PRINCIPLES THEREOF. In the event of a direct conflict between the provisions of this Agreement and any provision of the Certificate or any mandatory provision of the TBOC, the applicable provision of the Certificate or the TBOC shall control. If any provision of this Agreement or the application thereof to any Person or circumstance is held invalid or unenforceable to any extent, the remainder of this Agreement and the application of that provision to other Persons or circumstances is not affected thereby and that provision shall be enforced to the greatest extent permitted by law. In the event the TBOC is subsequently amended or interpreted in such a way to make any provision of this Agreement that was formerly invalid valid, such provision shall be considered to be valid from the effective date of such interpretation or amendment.

**10.7** **Creditors.** None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company.

**10.8** **Further Assurances.** In connection with this Agreement and the transactions contemplated hereby, each Member shall execute and deliver any additional documents and instruments and perform any additional acts that may be necessary or appropriate to effectuate and perform the provisions of this Agreement and those transactions.

**10.9** **Counterparts.** This Agreement may be executed in any number of counterparts with the same effect as if all signing parties had signed the same document. All counterparts shall be construed together and constitute the same instrument.

***[Signature Page Follows]***

IN WITNESS WHEREOF, the initial Member, the initial Manager and the Company have executed this Company Agreement of Cub Realty, LLC as of the date first set forth above.

**MEMBER:**

Lonnie K Ledbetter, Jr in his capacity as Trustee of
The Jones- Ledbetter Revocable Trust

Tawni Jones- Ledbetter in her capacity as Trustee of
The Jones- Ledbetter Revocable Trust

**COMPANY:**

CUB REALTY, LLC

Tawni Jones- Ledbetter, sole Manager

**MANAGER**

Tawni Jones- Ledbetter, sole Manager

# EXHIBIT A

## MEMBER; INITIAL CAPITAL CONTRIBUTION; SHARING RATIO

| Members | Initial Capital Contribution | Sharing Ratio |
|---|---|---|
| Lonnie K. Ledbetter, Jr.Tawni Jones-Ledbetter in their capacity as Trustees of The Jones- Ledbetter Revocable Trust | 2,365,000 Property | 100% |